WILLIAMS COCHRAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1836.   Promulgated March 7, 1945.

*E. W. Pavenstedt, Esq.*, and *A. C. Newlin, Esq.*, for the petitioner. *Jonas M. Smith, Esq.*, for the respondent.

948

950

OPINION.

TYSON, *Judge*: Section 117 of the Internal Revenue Code (as it stood in 1939) classifies gains from the sale or exchange of capital assets as long term and short term capital gains, depending upon whether the taxpayer has held the asset for more or less than 18 months; and it confers upon the taxpayer the advantage of accounting for only part of his gain if it is a long term capital gain and requires him to account for all of it if it is a short term capital gain. Section 115 (c) of the code[1] makes an exception in the case of gains from distributions in

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

     \*         \*         \*         \*         \*         \*         \*

    (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three

partial liquidation. It states that, despite the provisions of section 117, a gain recognized upon a distribution in partial liquidation shall be considered as a short term capital gain. Hence, all of the gain from a distribution in partial liquidation is subjected to tax, irrespective of how long the stock has been held.

The respondent determined that the petitioner had a short term capital gain through the partial liquidation of 3,256 shares of preferred stock of Gremoco, and the questions presented are whether amounts received by petitioner for those shares are distributions in partial liquidation within the meaning of section 115 (c), as the respondent contends, or whether the amounts were received through a purchase of the stock by Gremoco, or, alternately, as distributions in complete liquidation of Gremoco, as the petitioner contends.[2]

Section 115 contains its own definition of a partial liquidation. Subdivision (i) thereof states that the term "amounts distributed in partial liquidation" means "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." We are not called upon to decide whether there was a liquidation of a corporation or its business. The question to be decided is, Were the amounts received by petitioner for his preferred stock in Gremoco in complete cancellation or redemption of that part of Gremoco's stock? *Cohen Trust* v. *Commissioner*, 121 Fed. (2d) 689; *Hamilton Allport*, 4 T. C. 401; *W. C. Robinson*, 42 B. T. A. 725; *Salt Lake Hardware Co.*, 27 B. T. A. 482.

In the absence of actual retirement of the stock, it has been held that the purpose of the corporation to retire the stock must exist at the time of its acquisition in order that the amounts received for it may be treated as distributions in partial liquidation. *Alpers* v. *Commissioner*, 126 Fed. (2d) 58; *Harold F. Hadley*, 1 T. C. 496.

At the time of the acquisition of the first 1,256 shares of preferred stock (that is, 256 shares acquired on May 8, 1939, 100 shares acquired on August 7, 1939, and 900 shares acquired on October 12, 1939), the Gremoco Corporation had the intention of acquiring all of the preferred stock owned by the petitioner and retiring it. The plan was to purchase shares of that stock in varying amounts under the option, and

years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937, or (2) two years, if the first of such series of distributions was made in a taxable year beginning before January 1, 1938. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of sub-section (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *

[2] In computing the amount of the gain, the respondent erroneously found that the petitioner received $100 per share for the stock and computed the gain at $260,320. He now concedes, as he must under the facts, that the petitioner received only $83 per share and that the gain realized was $204,968.

to pay for them out of the proceeds of sales of Gremoco's marketable securities, which were to be made when higher prices could be realized for such securities, and to dissolve Gremoco after all of petitioner's preferred stock had been acquired in this manner. However, no specific date was set for dissolution. After Gremoco had operated under this plan, and after it had acquired the 900 shares of preferred stock on October 12, 1939, and before it acquired the 2,000 shares on November 10, 1939, the common stockholders believed that market prices for its securities had risen to the point where liquidation was justified, and they then determined that Gremoco should be completely liquidated at once. Gremoco thereafter purchased the remaining 2,000 shares of petitioner's preferred stock on November 10, 1939, and a few days later, on November 20, 1939, its directors voted for immediate dissolution and the stockholders executed a certificate of consent.

Certain correspondence between Wigren and Jordan. as officers and directors of the corporation, and some of the common stockholders shows beyond doubt that the stockholders in 1938 were anxious to liquidate the corporation and that they contemplated liquidation as soon as the petitioner's preferred stock could be acquired. Thus, in October 1938, shortly after the option had been obtained, Jordan told representatives of the Old Colony Trust Co. that Gremoco intended to make purchases under the option as soon as higher prices could be obtained and that after the preferred stock had been acquired it would proceed to liquidate. He also stated that, as endeavoring to continue the corporation was hopeless, it was planned to liquidate within the next year, provided prices of securities reached a point where the preferred stock leverage benefited the common stockholders. In the following November Jordan wrote to Thomas C. Savage stating that, if market prices for securities should be higher by the following spring "we can proceed with an orderly liquidation looking to dissolution." The correspondence between Savage and Jordan dated October 22 and 30, 1939, which appears in the findings of fact, confirms these earlier statements of the corporate intent. We think that this evidence establishes conclusively that Gremoco intended to retire the preferred stock at the time of its acquisition.

The petitioner argues that an intention not to retire the stock is shown by the action of the directors, at the time of each purchase, in directing that the preferred stock acquired be held as treasury stock, and by the action of Gremoco in treating it as treasury stock on its books and other records, and that, under the authority of such cases as *Alpers* v. *Commissioner, supra; William A. Smith*, 38 B. T. A. 317; *W. C. Robinson, supra; R. W. Creech*, 46 B. T. A. 93; and *Harold F. Hadley, supra*, we should hold that the proceeds received for the stock were not amounts distributed in partial liquidation. The corporations involved in the cases relied upon were going concerns and, unlike

Gremoco, they had no intention of liquidating or discontinuing their businesses. The carrying of purchased stock as treasury stock may, under circumstances like those present in the cases above cited, be indicative of an intent not to retire the stock, but such action is of no significance where, as here, all hope of continuing the business has been abandoned and the stockholders have determined to liquidate the corporation after acquiring all of the preferred stock. Cf. *Hammans* v. *Commissioner*, 121 Fed. (2d) 4.

The petitioner suggests various other reasons for characterizing the transactions as sales rather than distributions in partial liquidation. They are that the purchase was made in the exercise of an option, that the price paid was not the amount due upon redemption of the stock or in case of dissolution, and that the stock transfer taxes were paid by the petitioner. The fact that the transaction was carried out by resort to forms usually found in cases of sales or that it had the legal effect of transferring title to the stock is not controlling, *Cohen Trust* v. *Commissioner, supra; L. B. Coley*, 45 B. T. A. 405; and *Harold F. Hadley, supra*. The fact that the parties regarded the transfer as one which is subject to the stock transfer tax has little bearing upon what the corporation intended to do with the stock. The fact that the price paid varied from the redemption price is a factor entitled to consideration, *L. B. Coley, supra;* but it is not controlling. See *Benjamin R. Britt*, 40 B. T. A. 790; affd., 114 Fed. (2d) 10. And we may add that, if the purpose to retire the stock is shown, the fact that the corporation had the power to reissue it is of no consequence. *Hill* v. *Commissioner*, 126 Fed. (2d) 570.

The petitioner also makes some point of the fact that his motive in selling the stock to the corporation was to obtain money to meet his living expenses and other obligations, but the statute is not concerned with the intent of the stockholder in the matter. *Hamilton Allport, supra.*

We think the petitioner's alternative contention, that all amounts received by him from Gremoco for his preferred stock constituted distributions in complete liquidation, is untenable in so far as it applies to the 1,256 shares, and that it should be sustained as to the block of 2,000 shares of the preferred stock transfers.

Although the stockholders of Gremoco planned to liquidate as soon as all of the preferred stock had been acquired, their plan, as it existed prior to the decision for immediate liquidation made in mid-October 1939, did not provide for completion of the liquidation within a specified time. For this reason the amounts received by the petitioner for the 1,256 shares disposed of on May 8, August 7, and October 12, 1939, were not distributions in "complete liquidation" within the meaning of section 115 (c). The complete liquidation defined in that section

requires that the distributions be made in accordance with a bona fide plan of liquidation under which the transfer of the property under the liquidation is to be completed within a time specified in the plan not exceeding the period fixed in the statute; and where, as here, specification of a time limit is made after the stock has been acquired, the plan can not be given retroactive effect to cover prior distributions, *Amory L. Haskell*, 46 B. T. A. 164, 174; affd., 133 Fed. (2d) 202, such as those mentioned in this paragraph.

The block of 2,000 shares of preferred stock was disposed of on November 10, 1939, after the stockholders of Gremoco had decided to liquidate the corporation at once. The decision to liquidate at once was made sometime between October 12 and October 22, 1939, the resolution to dissolve immediately was passed on November 20, 1939, pursuant to that decision, and the corporation was dissolved as of November 30, 1939. The distribution with respect to the 2,000 shares, therefore, was a distribution in complete liquidation within the meaning of section 115 (c).

We hold that the distributions received with respect to the 1,256 shares of preferred stock were distributions in partial liquidation and that the gain thereon is taxable in full; and that the distributions received with respect to the 2,000 shares were distributions in complete liquidation and that the gain thereon is a long term capital gain, taxable to the extent of 50 percent thereof.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: I am unable to find from the facts in this case that the purchase by Gremoco of its preferred stock from the petitioner was "one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan." This provision of the statute contemplates a plan of the corporation as such for complete liquidation within a specified time and not something in the minds of the individual stockholders which they have not made the plan of the corporation and which is not definite and complete. Here the corporation never took any action until November 20, 1939, which was after all of this preferred stock had been acquired. Prior to that time there was nothing more than some more or less indefinite hopes, expectations, or intentions in the minds of some of the stockholders and officers. The evidence shows that these individuals were never able to make any definite plan for complete liquidation until all of the preferred stock had been acquired. Jordan's letter of October 30, 1939, is typical. It said in part: "This leaves him [the petitioner] with 2,000 shares.

We will make further purchases as we are able to in accordance with your wishes." Future action depended upon what the corporation was able to do and there was no definite plan for complete liquidation within any specified time.

Furthermore, if there was any plan, then 3,256 of the petitioner's shares were within that plan and not just 2,000, as is held in the majority opinion.

DISNEY, *J.*, agrees with this dissent.